USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMMA DERMODY,

                Plaintiff,

   -against-

CROTHALL HEALTHCARE INC. and COMPASS
GROUP USA, INC.

                Defendants.

21-cv-5838 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Emma Dermody ("Emma" or "Plaintiff") commenced the instant action on March 8, 2021, by filing the Summons and Complaint ("Compl."; ECF No. 2-1), in which she alleges that she suffered physical and mental injuries due to the negligence of Crothall Healthcare Inc. ("Crothall") and Compass Group USA Inc. (collectively, "Defendants") and claims that she is entitled to damages in excess of $1,000,000. (ECF No. 2-3.)  Specifically, Plaintiff alleges that she was injured when an employee of Defendants (the "Courier") negligently operated a mobile hospital bed (the "Bed") while Plaintiff, the Courier, and Plaintiff's coworkers were transporting a patient (the "Incident").  (Compl. at 8.)

Defendants' motion for summary judgment (the "Motion") (ECF No. 30) is now before the Court. For the following reasons, the Court DENIES Defendants' Motion.

## BACKGROUND

### I.     Factual Background

The facts are gleaned from the Complaint, Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") (ECF No. 33), and Plaintiff's Counter Statement to Defendant's Rule 56.1 Statement ("Plf. Resp") (ECF No. 29-1) and are uncontested except where indicated.

## A. Background

At all relevant times, Plaintiff was employed as a medical ICU nurse at Westchester Medical Center ("WMC"). (Plf. Resp. ¶ 2.) She worked in this position from 1986 to 2004 and then, following a ten-year gap, from 2014 to 2021. (*Id.* ¶ 3.) As an ICU nurse at WMC, Plaintiff was assigned to a particular patient each day. (*Id.* ¶ 4.) If it was necessary to transport a patient out of the ICU at WMC, Plaintiff accompanied them. (*Id.* ¶ 5.)

As of September 8, 2020, WMC contracted Defendants to provide patient transport services to the medical center. (*Id.* ¶ 29.) Defendants do not service all departments within WMC, however, as some departments use their own staff to transport patients. (*Id.* ¶ 30.) When WMC personnel request one of Defendants' couriers, they receive dispatch orders on hand-held devices and report to the location requested. (*Id.* ¶ 31.) The dispatch orders include specific pick up and drop off locations. (*Id.* ¶ 33.)

The parties dispute whether Defendants' couriers were exclusively used to transport patients in the area where the accident occurred (the "VIR Area") and had sole power over the controls on the Bed. Whereas Defendants claim that whether their couriers were used to transport patients depended on the location to which the particular patient needed transportation and that both WMC techs and Defendants' couriers would, at various times, control the Bed, Plaintiff claims that only Defendants' couriers transported patients in the VIR area and controlled the Bed. (*Id.* ¶¶ 34-36.) Likewise, although Defendant claims that WMC personnel told Defendants' couriers when they should move the Bed during a patient transfer, Plaintiff alleges that Defendants' couriers possessed exclusive use of the Bed's controls and (apparently by implication) final authority on when to move the Bed. (*Id.*)

## B. The Incident

On September 8, 2020, Plaintiff's assigned patient required a transfer to the vascular interventional radiology ("VIR") area at WMC for a dialysis procedure. (*Id.* ¶ 6.) Accordingly, Plaintiff contacted a respiratory therapist, the Courier, and VIR personnel to assist in this transfer. (*Id.* ¶ 7; *see also* ECF No. 27-2, at 2.) This procedure was routine at WMC— couriers were needed to help maneuver and transport a patient's bed from one location to another, and the ICU nurses or their clerks contacted couriers via a phone call or computer request. (*Id.* ¶¶ 8-9.). However, the parties dispute whether Plaintiff understood that Defendants' couriers were "part of the hospital"; whereas Defendants allege that Plaintiff believed the couriers were "part of the hospital," Plaintiff claims that she believed they were simply "in the hospital." (*Id.* ¶ 10.) The parties also dispute the characteristics of the Courier. Although Defendants claim that Plaintiff testified that the Courier at issue was a Caucasian man, Plaintiff insists that she "did not express certainty that the courier was Caucasian." (*Id.* ¶ 11.) The parties appear to agree, though, that there was only one Courier involved in the transfer of Plaintiff, that the Courier wore hospital scrub, and that the Courier was an employee of Defendants. (*Id.*)

When Plaintiff, the respiratory therapist, the Courier and the patient entered the VIR area, the VIR nurse met them. (*Id.* ¶ 12.) Plaintiff, the respiratory therapist, the Courier, and the VIR nurse worked as a team to move the patient onto the Bed from the VIR procedure table. (*Id.* ¶ 13.) More specifically, Plaintiff testified that she was the primary nurse for the patient in this situation, that she was required to ensure that everyone coordinated with one another to complete their role in the transfer, and that it was her job to give the "okay" to move the patient onto the Bed. (*Id.* ¶¶ 14, 17.) Defendants agree with this characterization but add that Plaintiff was also tasked with giving the "okay" to move the bed once the patient was on it. (*Id.* ¶ 16.) Plaintiff, however, claims that she did not testify that she directed the Courier "how to operate the [B]ed," seemingly to

dispute Defendants' assertion that she was responsible for giving the "okay" to move the Bed once the patient was placed onto it. (*Id.*) The Courier's role, in contrast, was to control the Bed using controls located at the top of it. (*Id.* ¶ 15.)

Following the completion of the dialysis procedure, Plaintiff suffered an accident while herself, the Courier, the VIR nurse, and the respiratory therapist transferred the patient from the VIR procedure table to the Bed. (*Id.* ¶¶ 19-23.)  As the courier operated the controls at the head of the Bed, Plaintiff, the VIR nurse, and the respiratory therapist physically moved the patient onto the Bed. (*Id.*) In the middle of this operation, and while Plaintiff was still moving the lower half of the patient onto the Bed, the courier used the controls to move the bed, catching Plaintiff's hand between the foot of the bed and doorframe.[1] (*Id.* ¶¶ 24-27.) At this point, Plaintiff yelled for everyone to stop. (*Id.*)

Subsequently, Plaintiff testified that she had not issued clearance to the Courier to move the Bed because she was still in the process of physically moving the lower half of the patient onto the Bed. (*Id.* ¶ 24.) Plaintiff also received Workman's Compensation benefits arising from this accident. (*Id.* ¶ 28; ECF No. 31-3, at 69.)

## II.     Procedural Background

Defendants filed an Answer (ECF No. 2-2) to Plaintiff's Complaint on May 26, 2021. Subsequently, on July 7, 2021, Defendants filed a notice of removal to remove this action from the Supreme Court of the State of New York, Westchester County, to the United States District Court for the Southern District of New York, White Plains Division. (ECF No. 2.)

---

[1] Although the papers do not specify that the Courier moved the Bed via the controls at this moment, the Court infers that this occurred— after the accident, Plaintiff told the Courier, "what, are you out of your mind, I didn't clear anybody to move anything," and the parties agree that the courier was tasked with operating the Bed via the controls at the top of it.  (*Id.* ¶ 27.)

On December 10, 2021, the Court entered an Amended Civil Case Discovery Plan and Scheduling Order and an Order of Reference referring this case to Magistrate Judge Paul E. Davison for General Pretrial matters, including discovery. (ECF Nos. 13 and 14.) A Discovery Order was then entered on December 13, 2021.

With leave of the Court, on November 23, 2022, Defendants filed a motion for summary judgment (ECF No. 30) and accompanying affidavits, statements of undisputed fact, and memorandums in support of their Motion. (ECF Nos. 31 and 33.) Plaintiff filed their opposition papers that same day. (ECF No. 32.) The Court now considers Defendants' Motion.

## LEGAL STANDARD

### I.        Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 Fed.Appx.

34, 36 (2d Cir. 2013) (summ. order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact")). But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S.

at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

**I.      The parties dispute whether the Courier was a "special employee" of WMC and, consequently, whether Defendants owed Plaintiff a duty of care.**

As noted *supra*, Plaintiff alleges that she was injured when the Courier negligently operated the Bed while Plaintiff, the Courier, and Plaintiff's coworkers transported a patient.  (ECF No. 2-1, at 8.) Under New York law, "[t]o establish a *prima facie* case of negligence, a plaintiff must establish the existence of a duty owed by a defendant to the plaintiff, a breach of that duty, and that such breach was a proximate cause of injury to the plaintiff." *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 205 (E.D.N.Y. 2014) (quoting *Nappi v. Inc. Vill. of Lynbrook*, 19 A.D.3d 565, 566 (2d Dep't 2005)).

The parties' dispute centers on the "duty of care" element and its connection to New York law governing Workers Compensation. Defendants rest their Motion on the argument that: (1) the Courier's alleged negligence is attributable to Plaintiff's employer, WMC, because the Courier was a "special employee" of WMC; (2) Worker's Compensation is the exclusive remedy for employees who are injured as a result of negligence attributable to their employer; and (3) Plaintiff received Workers Compensation following the Incident. (ECF No. 27-2, at 2-3.) Plaintiff, however, contends that there is a triable issue of fact as to whether the Courier remained an employee of Defendants at the time of the Incident (and that Defendants thereby owed Plaintiff a duty of care), which means that her claim is not barred purely because she received Workers Compensation. (ECF No. 32, at 3-4.) As discussed *infra*, the Court agrees with Plaintiff—

Plaintiff's negligence claim passes summary judgment because there remains a triable issue of fact as to whether the Courier was a special employee of WMC at the time of the Incident.

## II. There remains a triable issue of fact as to whether the Courier was a special employee of WMC.

It is well settled that Worker's Compensation is the exclusive remedy for employees who are injured as a result of negligence attributable to their employer. *See* N.Y. WORKERS' COMP.LAW § 11. This principle extends to employees who are injured due to the negligence of a "special employee." *See Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 578 N.Y.S.2d 106, 107–08, 585 N.E.2d 355 (1991). "A special employee is described as one who is transferred for a limited time of whatever duration to the service of another." *Id.* "Therefore, a general employee of one employer may be a special employee of another employer[]," *Giordano v. Freeman Decorating Co.*, No. 97 Civ.1928, 2000 WL 323256, at *3 (S.D.N.Y. Mar. 28, 2000), "notwithstanding the general employer's responsibility for payment of wages and for maintaining workers' compensation and other employee benefits." *Thompson*, 578 N.Y.S.2d at 108, 585 N.E.2d 355. Although categorization as a special employee is usually a question of fact, there is no *per se* rule that a question of fact always exists or that the question of special employment must go to a jury. *Thompson*, 585 N.E.2d at 357. "[T]he determination of special employment status may be made as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact." *Id.*

Several factors are considered when assessing whether a special employment relationship exists. These include:

> 1) the right to and degree of control by the alleged employer over the manner, details, and ultimate result of the work of the special employee; 2) the method of payment; 3) the right to discharge; 4) the furnishing of equipment; and 5) the nature and purpose of the work.

*Giordano*, 2000 WL 323256, at \*4 (quoting *Makarova v. United States*, No. 97 Civ. 4748, 1999 WL 58693, at \*6 (S.D.N.Y. Feb.5, 1999)); *see Martin v. Baldwin Union Free Sch. Dist.*, 271 A.D.2d 579, 706 N.Y.S.2d 712, 714 (2d Dep't 2000); *see also Forjan v. Leprino Foods, Inc.*, 209 Fed. App'x. 8, 10 (2d Cir. 2006) ("The factors to be considered in determining whether a special employment relationship exists include the right to control the employee's work, the method of payment, the furnishing of equipment, the right to discharge the employee, and the relative nature of the work.") (quotation omitted)). Although no one factor is determinative, the first factor (i.e., the right to and degree of control by the alleged employer over the manner, details, and ultimate result of the work of the special employee) is "significant and weighty." *Thompson*, 578 N.Y.S.2d at 109, 585 N.E.2d 355. However, there is a presumption of general employment, and a defendant may only rebut this presumption through a "clear demonstration of surrender of control by the general employer and assumption of control by the special employer." *Id.* at 108, 585 N.E.2d 355.

Here, it is undisputed that Plaintiff received Workers Compensation benefits following the Incident. (ECF No. 27-2, at 2-3.) Other pertinent facts are also undisputed and indicate that WMC possessed a meaningful level of control over the manner, details, and ultimate result of the work of the Courier. For instance: (1) WMC contracted Defendants to provide patient transport services to the medical center (Plf. Resp. ¶ 29); (2) when WMC personnel request one of Defendants' couriers, Defendants' couriers receive dispatch orders on hand-held devices and report to the location requested (*Id.* ¶¶ 31-33); and (3) Plaintiff was the primary nurse for the patient involved in the transfer at issue and was required to ensure that everyone coordinated with one another and completed their role in the transfer, including the Courier (*Id.* ¶¶ 14, 17). Plaintiff also admitted that she believed Defendants' couriers are "part of the hospital," noting, "we just call them… they

9

are in the hospital… they usually wear scrubs… we all have to have ID, so I believe they… they wear ID…" (ECF No. 31-3, at 15.)

However, the parties have offered minimal information relevant to the other factors that the Court must consider. Neither party has produced credible allegations or testimony that directly indicates what entity was responsible for: (1) paying Defendants' couriers: (2) discharging Defendants' couriers; or (3) furnishing equipment for Defendants' couriers' use. Moreover, an attempt to infer the answers to these questions on the information provided points the Court in opposite directions. Although it appears likely that WMC furnished the beds and other heavier equipment for Defendants' couriers because they did not transport all patients at the hospital and were simply "called" to assist with a particular patient when needed, the fact that Defendants maintained their own office location on the second floor of WMC's main hospital suggests that Defendants retained some control over their couriers (including paying them and deciding their employment status, and possibly providing some supervisory role over their day-to-day work). (ECF No. 31-4, at 8.) The parties also dispute the degree of control that WMC possessed over the actual work of the couriers in operating the Bed. Regarding the Incident, Plaintiff claims that she did not direct the Courier "how to operate the [B]ed," whereas Defendants assert that she was responsible for giving the "okay" to move the Bed once the patient was placed onto it. (Plf. Resp. ¶ 16.) Thus, it remains unclear whether WMC exercised the level of control over the Courier that courts in New York typically require to find that a special employment relationship existed— i.e., where the employer possessed the "sole right to control, direct, and supervise" the special employee. *Forjan v. Leprino Foods, Inc.*, 209 F. App'x 8, 10 (2d Cir. 2006); *see also Suarez v. Food Emporium, Inc.*, 16 A.D.3d 152, 153, 792 N.Y.S.2d 384, 386 (2005) (finding that a special employment relationship existed where the employer at issue directed the employee to report to

work on a given day and directly managed his daily work); *Williams v. Gen. Elec. Co.*, 8 A.D.3d 866, 868, 779 N.Y.S.2d 155, 158 (2004) (finding that a special employment relationship existed where the special employee reported daily to the employer at issue, this employer "exclusively controlled and directed the manner, details, and ultimate result of the [special employee's] work," and the general employer did not have supervisory personnel at the work site) (internal citation omitted).

In light of the uncertainty regarding the respective degrees of control that WMC and Defendants exercised over the Courier and being mindful that special employment is "usually a question of fact" reserved for a jury, the Court finds that there remains a triable issue of fact as to whether the Courier was a special employee of WMC (and, by extension, whether Defendants breached a duty of care to Plaintiff). *Santorelli v. Crothall Servs. Grp., Inc.*, No. 15-CV-978 (NG) (RLM), 2017 WL 728227, at *7–8 (E.D.N.Y. Feb. 23, 2017). Therefore, the Court denies Defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. The parties are directed to appear for a telephonic pretrial conference on September 21, 2023 at 10:00 AM.

To access the teleconference, please follow these directions: **(1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest.**

In preparation for and while engaging in a teleconference, please follow these guidelines:

1. Use a landline whenever possible.

2. Use a handset rather than a speakerphone.

3. Identify yourself each time you speak.

4. Be mindful that, unlike in a courtroom setting, interrupting can render both speakers unintelligible.

5. **Mute** when not speaking to eliminate background noise, i.e., dog barking, kids playing, sirens, papers shuffling, emails pinging, drinking, breathing. It all comes through. This will also prevent interruptions.

6. Avoid voice-activated systems that don't allow the speaker to know when someone else is trying to speak and they cut off the beginning of words.

7. Spell proper names.

8. Have the Judge confirm the reporter is on the line.

9. If someone hears beeps or musical chimes, that means someone has either come in or left the conference. Please be aware that the judge may need to clarify that the reporter has not lost the line. (This has happened before, and the reporter had to dial back in and tell the judge the last thing that the court reporter transcribed.)

Dated:   August 4, 2023                                    SO ORDERED:
         White Plains, New York

                                                    _____
                                                           NELSON S. ROMÁN
                                                      United States District Judge

12